**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Maria del Carmen Vasquez de Maldonado, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| JSG Babyfood LLC a/k/a JSG Organics LLC d/b/a HolleUSA, | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Maria del Carmen Vasquez de Maldonado (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by her attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1.      This action seeks to remedy the deceptive and misleading business practices of JSG Babyfood LLC a/k/a JSG Organics LLC d/b/a HolleUSA (hereinafter "Defendant") with respect to the marketing and sale of Defendant's various baby food products throughout the state of New York and throughout the country, including, but not limited to, the following products (hereinafter collectively the "Products"):

- Holle Goat Milk Toddler Drink;

- Holle A2 Cow Milk Toddler Drink;

- Holle Cow Milk Toddler Drink;

1

- Holle Organic Zebra Beet Fruit, Puree & Veggie Juice;

- Holle Organic Veggie Bunny, Veggie Puree;

- Holle Organic Panda Peach, Fruit & Grain Puree;

- Holle Organic Carrot Cat, Fruit & Veggie Puree;

- Holle Organic Blue Bird, Fruit & Grain Puree; and

- Holle Organic Banan Llama, Fruit Puree.

2.     Caregivers like Plaintiff trust manufacturers like Defendant to sell food for babies/children that is nutritious, safe, and free from harmful toxins, contaminants, and chemicals. Caregivers certainly expect that the food that they feed their infants and toddlers will be free from heavy metals, harmful toxins, and contaminants.

3.     Plaintiff and those similarly situated ("Class Members") relied on Defendant's misrepresentations when purchasing the Products.  As a result of these representations and omissions by Defendant, Plaintiff and the Class Members purchased the Products, and even paid a premium for the Products, based upon their representations.  Given that Plaintiff and the Class Members would not have purchased the Products had they known the truth and paid a premium for the Products based on Defendant's misrepresentations, Plaintiff and the Class Members suffered an injury in the amount of the price of the Products or premium paid.

4.     Defendant's conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350.  Defendant breached and continues to breach its warranties regarding the Products.  Defendant has been and continues to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendant on behalf of herself and the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

**FACTUAL BACKGROUND**

5.      Consumers lack the scientific knowledge necessary to determine whether the Defendant's products contain heavy metals or to know or ascertain the true nature of the ingredients and quality of the Products.  Reasonable consumers therefore must and do rely on Defendant to honestly report what its Products contain and potentially contain.

6.      Defendant did not list heavy metals as an ingredient on its Products' labels, nor do they warn of the potential presence of heavy metals in its Products.

7.      To the contrary, Defendant advertised its Products on its website and on Amazon.com as having "No detectable traces of heavy metals" and as being "Lead Free." Examples of these representations can be seen below:





## Holle Organic 6+ Zebra Beet Fruit Puree & Veggie Juice (12 Pack)

No reviews

$35.90

- One-time purchase $35.90
- Subscribe & save 10% $32.31

↻ Subscription details

Pay in full or in 4 interest-free installments for orders between $50 and $3000 with **shop** Pay
Learn more

**Size**

12 Pouches ($2.99 ea.)

https://holleusa.com/collections/organic-pouches/products/zebra-beet-pouch-apple-banana-with-beetroot          1/4



2/8/22, 11:12 AM                    Holle Organic 6+ Zebra Beet Fruit Puree & Veggie Juice (12 Pack) - Holle USA

**Qty**

Add to Cart

Buy with
**PayPal**

Free shipping on orders over $99

**Meet our newest offering from Holle.  Tasty organic fruit and vegetable purees made without added sugar or salt.  The ideal snack between meals or on the go.  Made with ingredients of the best Demeter/biodynamic & non-GMO quality in Italy.  Six varieties to choose from for 6 months +.  No detectable traces of heavy metals** (see analysis)

+ Ingredients

+ Directions For Use

## Customer Reviews

No reviews yet Write a review

### Write a review

**Name**

Enter your name

**Email**

john.smith@example.com

8.     In December 2021, The New York State Attorney General's Office (hereinafter "NY AG's Office") employed Brooks Applied Labs ("BAL") to test Defendant's Products for heavy metals.[1]  The study found that Defendant's Products did indeed contain detectable levels of heavy metals, including, arsenic, cadmium, mercury, and lead.[2]  Consequently, on February 16, 2022, the NY AG's Office informed Defendant that it engaged, "…in repeated or persistent fraud or illegality, deceptive business practices, and false or misleading advertising in violation of N.Y. Executive Law § 63(12) and General Business Law §§ 349 and 350."[3]

9.     Specifically, on December 22, 2021, BAL received 18 samples of Defendant's Products to analyze the total recoverable arsenic, cadmium, mercury, and lead contained therein.[4] The results of all 18 samples of Defendant's Products indicated that each one had varying high levels of heavy metals, including findings of arsenic, cadmium, mercury, and lead.[5]

10.    Not a single sample from Defendant did not contain heavy metals.  The testing from BAL revealed that Defendant's Products contained the following levels of heavy metals:

   a.   Arsenic: 0.8 - 5.3 ug/kgs;

   b.   Cadmium: 0.5 - 7.0 ug/kgs;

   c.   Mercury: 0.6 ug/kgs; and

   d.   Lead: 0.9 - 14.9 ug/kgs.[6]

11.    Based on these findings, the NY AG's Office advised Defendant to remove all of its false and misleading claims relating to its Products being free of heavy metals, including from Defendant's website and sales materials, which included virtual store fronts on online retailers

---

[1] *See* https://ag.ny.gov/sites/default/files/holle_cease_and_desist_-_complete.pdf (last accessed Mar. 29, 2022).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *See* https://ag.ny.gov/sites/default/files/holle_cease_and_desist_-_complete.pdf (last accessed Mar. 29, 2022).

such as Amazon.com.  The NY AG Office's also directed Defendant to remove statements pertaining to the Products having "no detectable traces of heavy metals," as well as any labels or graphics suggesting that its Products are free of heavy metals, such as "Pb" with a line through it.[7]

12.     Defendant's deceptive representations and omissions regarding heavy metals are material in that a reasonable person would attach importance to such information and would be induced to act on such information in making purchasing decisions.

13.     Defendant also knows that consumers, such as Plaintiff and the Class Members, are unwilling to purchase baby food that contains toxic heavy metals, especially given all the recent media coverage surrounding the issue.[8]  Furthermore, Defendant knew that reasonable consumers would be looking for alternatives to the products referenced in the congressional study/report and would rely on Defendant's representations and omissions regarding heavy metals and purchase their Products.  Defendant capitalized on Plaintiff and Class Members' desire to purchase baby food that was safe and healthy for the infants and children.

14.     Accordingly, Defendant also knew that if the elevated levels of toxic heavy metals in its Products was actually disclosed to consumers such as Plaintiff and Class Members, then they would have been unwilling to purchase the Products.

15.     Defendant therefore has violated, *inter alia*, NY General Business Law § 392-b by: a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and b) selling or offering for sale an article, which to its knowledge is falsely described or indicated upon

---

[7] *Id.*

[8] https://www.reuters.com/article/us-usa-congress-babyfood/high-levels-of-toxic-heavy-metals-found-in-some-baby-food-u-s-report-idUSKBN2A420C

any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

16.     Plaintiff and the Class Members reasonably relied on Defendant's misleading representations and omissions to their detriment.

17.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the public, as they have already deceived and misled Plaintiff and the Class Members.

18.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the Class Members in that they:

   a.    Paid a sum of money for Products that were not what Defendant represented;

   b.    Paid a premium price for Products that were not what Defendant represented;

   c.    Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

   d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

   e.    Ingested a substance that was of a different quality than what Defendant promised; and

   f.    Were denied the benefit of the beneficial properties of the foods Defendant promised.

19.     Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class Members would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class Members would not have been willing to purchase the Products.

20.     Plaintiff and the Class Members all paid money for the Products; however, Plaintiff and the Class Members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the Class Members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the Products.  Consequently, Plaintiff and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the state of New York, Defendant JSG Babyfood LLC a/k/a JSG Organics LLC d/b/a HolleUSA is a citizen of the state of New York; more than two-thirds of the class members reside outside the state of New York; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

22.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

23.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York.  A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

24.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of the state of New York.  Plaintiff purchased the Products during the Class Period in the years

2021 through 2022.  Plaintiff purchased the Product in the state of New York and read the Product's marketing in the state of New York.  Plaintiff purchased the Products, including the Holle A2 Cow Milk Toddler Drink.  The packaging of the Products Plaintiff purchased did not contain the representation that the Products contained harmful contaminants and heavy metals.  If the Products actually were free of harmful contaminants and heavy metals, Plaintiff would purchase the Products in the immediate future.

25.     Had Defendant not made the false, misleading, and deceptive representations and omissions regarding the Products, Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of and/or paid more for the Products than she would have had she known the truth about the Products.  The Products Plaintiff received were worth less than the Products for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct.

**Defendant**

26.     Defendant, JSG Babyfood LLC a/k/a JSG Organics LLC d/b/a HolleUSA, is a New York Corporation.  Defendant manufactures, markets, advertises, and distributes the Products throughout the United States.  Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of their Products.

**CLASS ALLEGATIONS**

27.     Plaintiff brings this matter on behalf of herself and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and representation practices.  Defendant's customers were uniformly impacted by and exposed to this

misconduct.  Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

28.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period (the "Class").

29.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

30.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

31.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

32.     Numerosity: Class Members are so numerous that joinder of all members is impracticable.  Plaintiff believes that there are thousands of consumers in the Class and the New York Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices.

33.     Commonality: The questions of law and fact common to the Class Members predominate over any questions which may affect individual Class Members including, but not limited to:

a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

11

c.      Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.      Whether Defendant's false and misleading statements concerning its Products were likely to deceive the public;

e.      Whether Plaintiff and the Class are entitled to injunctive relief; and

f.      Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members?

34.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

35.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, her consumer fraud claims are common to all members of the Class, she has a strong interest in vindicating her rights, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

36.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and representation practices.

37.     <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.      The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

12

b.      The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.      When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.      This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.      Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.      This class action will assure uniformity of decisions among Class Members;

g.      The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all class members who were induced by Defendant's uniform false advertising to purchase its Products that have "No detectable traces of heavy metals" and are "Lead Free."

38.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

39.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about ingredients in its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendant's continuing misconduct.  Plaintiff would purchase the Products again if it were actually free from heavy metals.

40.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.      <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendant's Products have been purchased by thousands of people throughout the United States;

b.      <u>Commonality</u>: Questions of law and fact are common to members of the Class. Defendant's misconduct was uniformly directed at all consumers.  Thus, all members of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

  i.      Resolution of the issues presented in the 23(b)(3) class;

  ii.     Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive Products marketing and representations; and

  iii.    Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products as having "No detectable traces of heavy metals" and as being "Lead Free?"

c.      <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff is a typical representative of the Class because, like all members of the injunctive

Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

    d.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

41.    The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive representations to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of its Products.  Plaintiff would purchase the Products again if it actually had "No detectable traces of heavy metals" and was "Lead Free."

**<u>CLAIMS</u>**

**<u>FIRST CAUSE OF ACTION</u>**
**<u>VIOLATION OF NEW YORK GBL § 349</u>**
**(On Behalf of Plaintiff and New York Subclass Members)**

42.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

43.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

44.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, representing, marketing, and promoting the Products and from charging consumers monies in the future.

45.     Defendant misleadingly, inaccurately, and deceptively advertise and market the Products to consumers.

46.     Defendant's improper consumer-oriented conduct (including advertising the Products as having "No detectable traces of heavy metals" and as being "Lead Free") is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.  Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

47.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for a Products that, contrary to Defendant's representations, have heavy metals. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

48.     Defendant's advertising and Products' representations induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for it.

49.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

50.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory damages of $50 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

51.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

52.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

53.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

54.     Defendant's representations and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products have "No detectable traces of heavy metals" and are "Lead Free."

55.     Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon these representations and advertising and paid a premium for the Products which, contrary to Defendant's representations, have 'detectable traces of heavy metals" and are not "Lead

Free."  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

56.     Defendant's advertising and Products' representations induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

57.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

58.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

59.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising and representations.

60.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

61.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, injunctive relief, restitution, and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and All Class Members)**

62.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63.     Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products as having "No detectable traces of heavy metals" and as being "Lead Free."

64.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

65.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

66.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

67.     Within a reasonable time after they knew or should have known, Defendant did not correct their Products' marketing and labeling to reflect the true nature of the Products' capabilities.

68.     Defendant breached the express warranty because the Products contain heavy metal and contaminants.

69.     As a direct and proximate result of Defendant's breach of the express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**FRAUDULENT CONCEALMENT**
**(On Behalf of Plaintiff and All Class Members)**

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     Defendant concealed and failed to disclose the material fact the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

72.     Defendant had knowledge that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

73.     Defendant had a duty to disclose that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.

74.     Defendant had superior knowledge or means of knowledge available to them and knew that Plaintiff and the Class would rely upon the representations and omissions of Defendant regarding the quality of its products.   Consumers lack the meaningful ability to test or independently ascertain or verify whether a product contains elevated levels of toxic heavy metals, especially at the point of sale.

75.     Defendant's concealment was material and intentional because caregivers are concerned with what they are feeding to the children in their care.  Caregivers are influenced by the ingredients listed, as well as any warnings (or lack thereof) on the products they buy and feed to the children in their care.  Defendant knows that if it had not omitted that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or

healthy for consumption, then Plaintiff and the Class would not have paid a premium for the Products (or purchased them at all).  Defendant instead wanted to increase sales/profits.

76.     Defendant's concealment misled Plaintiff and the Class as to the true nature of what they were buying and feeding to children.

77.     Defendant fraudulently concealed that the Products contained, or were at risk of containing, elevated levels of toxic heavy metals, that they were not testing the amount of toxic heavy metals in their finished products, and that the products were not safe or healthy for consumption.  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

78.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79.     Plaintiff, on behalf of herself and consumers nationwide, brings a claim for unjust enrichment.

80.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

81.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

82.     Plaintiff and Class Members conferred significant financial benefits and paid

substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

83.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff and Class Members' overpayments.

84.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with New York's consumer protection statutes;

(c) Awarding monetary damages and treble damages;

(d) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(e) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(f) Awarding punitive damages;

(g) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, as well as reimbursement of Plaintiff's expenses; and

(h) Granting such other and further relief as the Court may deem just and proper.

Dated: April 5, 2022

THE SULTZER LAW GROUP P.C.

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
Joseph Lipari, Esq.
Daniel Markowitz, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
liparij@thesultzerlawgroup.com
markowitzd@thesultzerlawgroup.com

David C. Magagna Jr., Esq.
Charles E. Schaffer, Esq.
LEVIN SEDRAN & BERMAN
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: 215-592-1500
dmagagna@lfsblaw.com
cschaffer@lfsblaw.com

Jeffrey K. Brown, Esq.
LEEDS BROWN LAW, P.C.
1 Old Country Rd., Suite 347
Carle Place, NY 11514
Tel: (516) 873-9550
jbrown@leedsbrownlaw.com

*Counsel for Plaintiff and the Class*